IiERGET, Judge.
Upon the death of Mrs. Uranie Vicknair Rome, Mrs. Henry J. Baudoin opened the succession and made application for appointment as Administratrix thereof. Mrs. Helen Rome Tores filed a rule to show cause why any orders relating to the administration proceedings should not be recalled and set aside, and, further, why an alleged holographic will and testament of the decedent dated June 15, 1959 should not be admitted to proof and probated.
From a judgment on the rule ordering that same be made absolute as prayed for Mrs. Henry J. Baudoin perfected a suspen-sive appeal to this Court.
The contested will reads as follows:
“Helen
When I die every thing is for you Take care of the tooms 15 June 1959 (Sgd.) Mrs. Merville Rome”
The issues presented are twofold. (1) Is the will a forgery? And, (2) Is the person designated in the will as “Helen” the Plaintiff in rule, Mrs. Helen Rome Tores?
In proof of the will Plaintiff in rule testified same was entirely written, dated and signed in the handwriting of Mrs. Rome; that she had found the instrument on April 17, 1960 in the sideboard in the left hand top drawer in decedent’s home; that subsequent to the death of Mrs. Rome Plaintiff in rule visited the district attorney and obtained his permission to enter the home for the purpose of ascertaining whether decedent had left a last will and testament therein; that upon finding the instrument in question she took same to the district attorney and then to Mr. Peltier, her attorney in these proceedings. Counsel for appellant question the authority of Plaintiff in rule to have entered the home of decedent and question the circumstances under which she made such entry.
The district attorney was not called as a witness by either side. Counsel for appellant maintains if in fact the alleged permission was granted by the district attorney to Plaintiff in rule to enter the home and search for the will, that appellee should have called him as a witness. Inasmuch as Plaintiff testified she had obtained such permission from the district attorney and had shown the will to him upon finding same we are of the opinion — though we are expressing no opinion on the right or authority of the district attorney to grant such permission — it appears highly improbable that one intending to forge a will or present same for probate would enlist the assistance of the district attorney. Therefore, her un-contradicted testimony to that fact gives credence to her sworn statements. Moreover, if appellant doubted the testimony of appellee, that in fact appellee did not obtain such permission from the district attorney and did not show him the will upon finding same, then and there appellant was afforded an opportunity to call the district attorney as her witness to contradict appellee on a most relevant statement of fact given under oath and if thereby the district attorney gave contradictory testimony it would most certainly destroy the credibility to be attached to her testimony.
*667 Proof that the will was entirely written, dated and.signed by Mrs. Rome consisted of the testimony of Plaintiff in rule, Mrs. Tores; of Mr. Harry Waguespack, a deputy sheriff; and of Mr. A. J. Qaudet, executive vice-president of the Raceland Bank and Trust Company. In addition, Plaintiff in rule offered the testimony of Mr. Ralph O. Queen who qualified as a handwriting expert. This expert made extensive examinations of known specimens of handwriting of decedent and concluded, “ * * * it is my definite opinion that it would be impossible for anybody to have written this except the author of the specimen writing.”
The Trial Judge in his written reasons for judgment said:
“The lay testimony offered by the defendant in rule can be given little weight. Mrs. Henry Baudoin apparently knew little about the handwriting of Mrs. Rome but simply did not believe in the validity of the will. Mrs. Eva Burch, the main lay witness for the defendant in rule, did nothing more than convince the Court that she was a biased witness.”
In addition, Defendant in rule offered the testimony of Mr. Gilbert J. Fortier who also qualified as a handwriting expert. Mr. Fortier was of the opinion the will had not been written by Mrs. Rome and his testimony in his conclusion was in direct conflict with that of Mr. Queen. Mr. Fortier predicated his opinion upon idiosyncrasies found in the handwriting of the purported will, such as retouches, separations, blunt endings, hesitations and heavy movement on the downstroke areas. Under cross-examination he admitted presence of these same idiosyncrasies in known specimens of handwriting of decedent. The Trial Court examined the document in question and compared same with known specimens of handwriting of decedent and concluded the instrument was entirely written, dated and signed in the handwriting of decedent. We likewise have made such examination and have reached the same conclusion.
The next issue to be resolved is whether “Helen” designated in the will is Plaintiff in rule, Mrs. Helen Rome Tores.
LSA-Civil Code Article 1714 reads as follows:
“In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, and to him shall the legacy be decreed.”
Article 1715 reads as follows:
“When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.”
The evidence reflects Plaintiff in rule, Mrs. Tores, was a niece by marriage of decedent and had visited decedent frequently during the past twenty-five years of her life. Evidence was introduced of numerous occasions on which decedent had given Mrs. Tores gifts. Evidence was also offered by Mr. Waguespack who was a neighbor of decedent to the effect Mrs. Tores was a frequent visitor of Mrs. Rome and that he often saw her bring dinner to Mrs. Rome. He further related to his knowledge he knew of no other relative of decedent or close friend or acquaintance called “Helen” except Mrs. Tores.
Mrs. Eva C. Burch, called by Defendant in rule, conceded Mrs. Tores visited Mrs. Rome on an average of once a week and whenever decedent used the name “Helen” she would be referring to Plaintiff in rule. Even the Defendant in rule, Mrs. Baudoin, testified there was no friend or relative of Mrs. Rome who had the name Helen, other than Plaintiff in rule.
Under the articles of the Civil Code quoted supra, it was admissible to offer parol evidence to prove the name “Helen” *668 was intended to mean and did designate Plaintiff in rule, Mrs. Helen Rome Tores, as the legatee.
From our review of the record such identity has been proved. Sisters of Charity of Incarnate Word v. Emery, 144 La. 614, 81 So. 99.
Affirmed.